[No. 27277. Department One. February 21, 1939.]

*In the Matter of the Estate of* ANNA NIELSEN, *Deceased.*

AUGUST NIELSEN, *Appellant,* v. ALMA SCHULTE, *Individually and as Executrix, Respondent.*[1]

[1]Reported in 87 P. (2d) 298.

*Joseph Matsen* and *John P. Matsen,* for appellant.

*Robert A. Devers,* for respondent.

BLAKE, C. J.—Anna Nielsen died January 9, 1936. On January 14, 1936, a will, executed May 19, 1928, was presented for probate by Alma Schulte, the person named as executrix. Testimony of only one of the subscribing witnesses to the will was given with respect to the execution of the will.

It does not affirmatively appear in the record that any evidence was given with respect to the authenticity of the signature of the other witness, as provided by Rem. Rev. Stat., § 1382 [P. C. § 10051]. But independent proof was made of the authenticity of the signature of the testatrix and of her mental capacity at the time the will was executed. The court entered a decree admitting the will to probate and appointing Alma Schulte executrix. The decree contained recitals of facts showing that the will was duly executed.

On January 25th, August Nielsen, the surviving husband of the testatrix, filed a petition praying that probate of the will be revoked. Under the will admitted to probate, he was beneficiary only to the extent of a bequest of ten dollars. He alleged that the will probated was not the last will and testament of the decedent. On February 25th, Nielsen filed an amended petition to revoke probate of the will. He not only alleged that the will admitted to probate was not the last will and testament of decedent, but affirmatively alleged:

" . . . that the deceased Anna Nielsen executed and published a subsequent will, the exact date of which to your petitioner is unknown."

He also alleged that the will was not entitled to probate because

" . . . one of the attesting witnesses to said will, was not produced nor his absence accounted for, nor was proof of his handwriting made according to the statutes in such cases provided for."

Upon motion of the executrix to make the amended petition more definite and certain, the court entered an order requiring petitioner to set forth, by way of a bill of particulars,

" . . . the name of the place in which the subsequent will . . . was made, the names of the witnesses to said will and the approximate date of the execution of said will, . . ."

The petitioner having failed to comply with the order, the court, on motion of the executrix, entered an order, striking the amended petition and dismissing "the contest of said will." No appeal was taken from the order so entered. Nor was any other petition in contest of the will filed within six months of the entry of the decree admitting it to probate.

On October 15, 1936, the executrix filed her final report and petition for distribution. On October 27, 1936, Nielsen filed objections to the final account and petitioned that

" . . . an order be entered herein awarding and setting aside to him in lieu of homestead property of the above estate not exceeding the value of $3,000, . . ."

On December 22, 1936, the final report, petition for distribution, and the objections thereto came on regularly for hearing in department No. 13, Judge Kinne presiding. In the court journal appears the following minute entry as of that day:

"Gus Nielsen & Joseph Dietz, sworn and examined. Executrix—Ex. 1 Deed—filed. Petitioner Rests. Counsel for respondent moves for dismissal of application. Motion is denied. Mrs. Paulson, Henry G. Schulte and Alma Schulte are sworn and examined. At this time

respective counsel stipulate in open court to a settlement. Cause continued on call."

Thereafter, counsel for the executrix embodied the terms of the settlement in a written stipulation or agreement which Nielsen refused to sign. Whereupon, Eggerman & Rosling, his then counsel, withdrew from the case. Adams & Clark were substituted as counsel in their stead.

Under date of March 12, 1937, the following appears in the court journal of department No. 13:

"In The Matter of The Estate No. 63484
 OF Minute Entry
"Anna Nielsen, Deceased. Dept. No. 13

"This cause come on for hearing upon a settlement. Marie Nietche, Edward Rosling, Gus Nielson are sworn and examined.

"After argument by counsel the court finds that the stipulation presented to the court is the same as was orally agreed to by all parties at the time of trial."

On March 16, 1937, the court entered its decree approving the final account and distributing the property of the estate in accordance with the stipulation which it found to have been made. No appeal was taken from the decree so entered.

On February 18, 1938, however, Nielsen, through his present attorneys, filed a motion to dismiss the alleged probate proceedings for want of jurisdiction, and because jurisdiction "was improvidently assumed or obtained." He also moved that the decree of distribution entered March 16, 1937, "be forthwith adjudged to be null and void for having been improvidently entered." On the same day, he filed a petition in the cause praying that the "alleged probate proceedings be dismissed for want of jurisdiction," because of fraud, and because "the alleged will was improvidently admitted to probate." He also prayed that the decree of distribution,

entered March 16, 1937, be vacated, because of fraud practiced by the successful party, and because it was improvidently entered.

On the same date, February 18, 1938, Nielsen initiated a new action, No. 69408, by filing a petition for letters of administration upon the estate of Anna Nielsen. The causes, having been consolidated for trial, came on for hearing in department No. 4, Judge Findley presiding. After hearing the evidence and arguments of counsel, Judge Findley entered decrees denying Nielsen any relief and dismissing all his applications. From the decrees so entered, the cases are here on a consolidated appeal.

Appellant has made sixteen assignments of error which counsel have argued under eight leading topics, each containing numerous subdivisions. It is neither feasible nor necessary to discuss the topics or subdivisions *seriatim*. For, as we view the record, all of appellant's contentions must stand or fall upon the answer to two questions; the first to be determined as a matter of law from the record, the second to be determined as a matter of fact from the evidence. The questions are: (1) Did the court have jurisdiction to enter the decree admitting the will to probate? (2) Was the agreement upon the basis of which the decree of distribution was entered on March 16, 1937, induced by fraud?

*First*: The jurisdiction of the court to hear applications for the probate of wills is found in Rem. Rev. Stat., § 1380 [P. C. § 10049], which provides:

"Applications for the probate of a will and for letters testamentary, or either, may be made to the judge of the court having jurisdiction and the court may immediately hear the proofs and either probate or reject such will as the testimony may justify. Upon such hearing the court shall make and cause to be entered a formal order, either establishing and probating such

will, or refusing to establish and probate the same, and such order shall be conclusive as against all the world except in the event of a contest of such will as hereinafter provided. *All testimony in support of the will shall be reduced to writing, signed by the witnesses, and certified by the judge of the court."* (Italics ours.)

It does not seem to be seriously questioned that all necessary facts existed to invoke the jurisdiction of the court: death of the testatrix, while a resident of King county, leaving property within the jurisdiction of the court. As has been pointed out, the court did not reduce to writing any testimony with respect to the signature of the attesting witness who did not testify. Nor does there appear in the record any reason for not producing him—death, insanity, or unknown residence. (Rem. Rev. Stat., § 1382.) This, however, is merely an irregularity in the proceedings antecedent to the decree admitting the will to probate. It does not affect the jurisdiction of the court to enter the decree. See *Estate of McCarty,* 58 Cal. 335; 26 Cal. Jur. § 355. Indeed, the decree itself, in terms, recites all jurisdictional facts upon which it is based. The decree was not void. Under the express terms of the statute itself (Rem. Rev. Stat., § 1380), it became "conclusive as against all the world"—including Nielsen, after the time to appeal from the order dismissing his contest elapsed. *State ex rel. Wood v. Superior Court,* 76 Wash. 27, 135 Pac. 494; *In re Hoscheid's Estate,* 78 Wash. 309, 139 Pac. 61; *In re Peck's Estate,* 153 Wash. 687, 280 Pac. 87.

But it is further said that the decree admitting the will to probate was improvidently entered because the will was mutilated; that fraud, therefore, inhered in the proceeding. The fact that the will was mutilated was not sufficient ground for refusing to admit the

effective portions of it to probate. *In re Appleton's Estate,* 163 Wash. 632, 2 P. (2d) 71.

▮ Furthermore, fraud in procuring the probate of a will must be raised by way of a contest. Otherwise, the decree admitting the will to probate becomes conclusive. *In re Hoscheid's Estate,* 78 Wash. 309, 139 Pac. 61. In that case, the court said:

"It will not do to say that the statute accords the right of contest only as to things going to the validity of the will at the time it was executed. The will speaks as of the date of the testator's death, and the probate establishes its status as of that date. Anything going to the validity of the will as of that date is clearly a proper subject to be raised by a contest of the probate. While the statute enumerates as particular grounds for contest certain things going to the validity of the will arising at the time of its execution, namely, testamentary capacity, restraint, undue influence, and fraudulent representations, it adds, 'or for any other cause affecting the validity of such will.' This clause is certainly broad enough to include any cause affecting the validity of the will at the time of probate, and must be so construed, since the right of contest only arises on the probate, and is accorded by the statute for the very purpose of testing the validity of the instrument as a will. . . .

"In this state, however, as we have seen, the probate court is the superior court, with general jurisdiction, both legal and equitable. Anything going to the validity of the will at the time of probate may be tried out in that court, and in that proceeding, and either legal or equitable relief granted, according to the circumstances. The remedy accorded by our statute providing for the contest of a will is, therefore, full, complete and adequate, if invoked within the time fixed by the statute. The limitation, being absolute except as to certain persons under disability, must, therefore, apply alike to contests upon equitable, as well as upon legal grounds."

Having failed to appeal from the order dismissing his contest, Nielsen is now precluded from raising any

questions of irregularity or fraud in the proceedings leading up to the decree admitting the will to probate.

 *Second:* A decree of distribution from which no appeal is taken is final and conclusive upon all parties of whom the court has jurisdiction. *Krohn v. Hirsch,* 81 Wash. 222, 142 Pac. 647; *Meeker v. Waddle,* 83 Wash. 628, 145 Pac. 967; *Coleman v. Crawford,* 140 Wash. 117, 248 Pac. 386. It is not conclusive, however, as to property which has been fraudulently withheld from administration *(In re Dyer's Estate,* 161 Wash. 498, 297 Pac. 196); and, of course, when it is entered upon stipulation or agreement, it may be attacked for fraud inducing the agreement.

 Appellant contends that he was induced to enter into the stipulation reflected by the decree of distribution without knowledge of valuable assets belonging to the estate of Anna Nielsen and which had not been the subject of administration; that the executrix failed to disclose facts concerning the assets of the estate which she was bound to reveal; that, but for such concealment, appellant would not have consented to the entry of a decree of distribution upon the terms agreed to. While the trial court made no findings of fact, he expressed the view that appellant had as much knowledge of the claimed assets of Anna Nielsen's estate at the time he entered into the agreement with respect to the decree of distribution as he had at the time of the hearing of his petition to vacate that decree. We think this view is fully borne out by the evidence as disclosed by this record. Reviewing the record briefly, the following facts appear to be either undisputed or established by a clear preponderance of the evidence.

Anna Nielsen was married to appellant in 1924. They had no community property. In 1905, decedent had been married to John Henry Schulte, who died in 1921. Before coming to Seattle, she and Schulte had lived in

Vancouver, British Columbia, where they acquired several parcels of real property. This property was registered in the name of Anna Nielsen at the time of her death. But in 1922 she had delivered deeds to Alma Schulte, the executrix named in her will, who filed them for registration subsequent to Mrs. Nielsen's death. Alma Schulte was Mrs. Nielsen's own niece and had married Schulte's son by a former marriage.

Mrs. Nielsen had another niece, Irma Winter, who lived in Vancouver, British Columbia. At the time of Mrs. Nielsen's death, there was a joint account of nearly seven thousand dollars standing in her name and the name of Irma Winter in a bank in Vancouver. A few days after Mrs. Nielsen's death, Irma Winter withdrew this money and turned it over to Alma Schulte. Subsequent to the entry of the decree of distribution, the nieces became involved in litigation over the right to these funds. The litigation resulted in the establishment of Irma Winter's right to them.

It was upon facts alleged to have been discovered during that litigation that appellant bases his charge of fraud and concealment on account of which he seeks to have the decree of distribution vacated. Of appellant's knowledge of all the facts which he charges were concealed from him at the time the decree of distribution was entered, the trial court said:

"He was not deceived or defrauded in any way by anything that happened in regard to those properties in Vancouver. . . . He knew all about those diamonds. . . . A man cannot be deceived by something that he knows all about, and he knew about the diamonds. . . . Now with reference to the fur coat, what about the fur coat and furniture? They knew about those things. This petitioner knew about the fur coat; . . . and when they made the adjustment, whatever it was, they knew about those things, they were advised about them. But what about this talk about the $6,300 that was in Vancouver there in

the bank? . . . where is he defrauded in the matter? How does that affect him? He knew about it. He knew there was $6,300 because he is contending that at that time that should have come into the estate. . . . I must, therefore, hold that under the evidence as submitted, in my opinion that there is no slightest bit of evidence to warrant this court in setting aside this decree of Judge Kinne under date of March 16, 1937, as having been entered by fraud in any way, shape or manner as against this petitioner, and the application, therefore, is denied."

From our examination of the evidence, we do not think the court would have been justified in a different conclusion.

The decrees are affirmed.

JEFFERS, MAIN, STEINERT, and ROBINSON, JJ., concur.